UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RODNEY JONES,

    Plaintiff,

v.                                                         Case No: 6:17-cv-447-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Rodney Jones, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

On November 16, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits alleging disability beginning January 1, 2009. (Tr. 103, 127). Plaintiff subsequently amended his alleged onset date to December 1, 2010. (Tr. 299-300). Plaintiff's application was denied initially on January 12, 2012, and on reconsideration on May 4, 2012. (Tr. 127). Plaintiff requested a hearing and, on June 5, 2013, a hearing was held before Administrative Law Judge Douglas A. Walker (the "ALJ"). (Tr. 41-64). On July 7, 2013, the ALJ entered an unfavorable decision finding Plaintiff not disabled. (Tr. 124-42). Plaintiff appealed the ALJ's decision and, on September 24, 2014, the Appeals Council remanded the case. (Tr. 143-47).

On June 5, 2015, a second administrative hearing was held before the ALJ pursuant to the Appeals Council remand. (Tr. 65-88). On September 9, 2015, a third hearing was held before the ALJ. (Tr. 89-102). On October 7, 2015, the ALJ entered a second unfavorable decision finding Plaintiff not disabled. (Tr. 17-40). Plaintiff requested review of the decision and the Appeals Council denied Plaintiff's request on January 11, 2017. (Tr. 1-6). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on March 13, 2017. The parties having filed a joint memorandum setting forth their respective positions, this case is ripe for review.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of December 1, 2010, through his date last insured of September 30, 2014. (Tr. 23). At step two, the ALJ found that Plaintiff had the following severe impairments through his date last insured: carpal tunnel syndrome of the right hand, status post open carpal tunnel release of right hand and elbow, schizophrenic disorder, affective disorder, and a history of polysubstance abuse in remission. (Tr. 23). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC"), through the date last insured, to:

> perform light work as defined in 20 CFR 404.1567(b), except that he would require work which is simple and unskilled; he can sit, stand, or walk for six hours, with normal breaks, in an eight-hour workday, he can also lift twenty pounds occasionally and ten pounds frequently, but he should avoid frequent ascending or descending stairs; he should avoid pushing and pulling motions with his lower extremities within the aforementioned weight restrictions; he should avoid hazards in the workplace, such as unprotected areas of moving machinery, heights, ramps, ladders, scaffolding; and, on the ground, unprotected areas of holes and pits; he can occasionally balance, stoop, kneel, crouch, or crawl, but he should avoid climbing ropes, scaffolds, and ladders exceeding 6 feet; he can perform no more than occasional overhead reaching with his upper right extremity; he has non-exertional limitations which frequently affect his ability to concentrated upon complex or detailed tasks, but he would remain capable of understanding, remembering and carrying out simple job instructions; making work related judgments and decisions, responding appropriately to supervision, coworkers and work situations, and dealing with changes in routine work setting; however, the claimant should avoid stressful situations such as frequently working with coworkers in a team, frequently working directly with the public (although there may be some occasional indirect contact with the public), and he should avoid working in an environments where frequent interpersonal

> interaction is required with coworkers (not including normal workplace
> banter, since workplace banter is not a requirement) and he should work
> in an environment where he makes few decisions, and uses little judgment.

(Tr. 27). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (Tr. 32).

At step five, the ALJ found relied upon the testimony of a vocational expert ("VE") and found that an individual with Plaintiff's age, education, work experience and RFC could work as a parts cleaner; cleaner, housekeeping; and laundry worker. (Tr. 33-34). The ALJ concluded that Plaintiff was not under a disability at any time from December 1, 2010, the alleged onset date, through September 30, 2014, the date Plaintiff was last insured. (Tr. 34).

## II. Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to properly weigh Plaintiff's 100% VA disability rating; (2) whether the ALJ erred by giving Plaintiff's GAF scores little weight; and (3) whether the ALJ erred by failing to properly weigh the mental health opinion evidence. The Court will address each issue in turn.

### a) Whether the ALJ erred by failing to properly weigh Plaintiff's 100% VA disability rating.

Plaintiff argues that the ALJ erred by according little weigh to Plaintiff's 100% VA disability rating. (Doc. 19 p. 18-20). Plaintiff contends that the VA disability rating was entitled to great weight pursuant to Eleventh Circuit case law and that substantial evidence does not support the ALJ's rejection of the rating. (Doc. 19 p. 19-20). In response, Defendant argues that the ALJ properly considered and discounted the VA disability rating. (Doc. 20 p. 20-23).

The record indicates that Plaintiff served in the United States Navy in 1983, until he was medically discharged due to mental illness, and as such receives medical treatment from the VA. (Tr. 504). The VA assigned a 100% disability evaluation for Plaintiff's schizophrenia based on

his total occupational and social impairment, persistent delusions and hallucinations, difficulty in adapting to stressful circumstances, impaired impulse control, inability to establish and maintain effective relationships, neglect of personal appearance and hygiene, the examiner's assessment of his current mental functioning (which was partially reflected in his GAF score of 45), chronic sleep impairment, and suspiciousness. (Tr. 363-364).

In his decision, the ALJ explained the weight he accorded the VA disability rating as follows:

> The undersigned also considered that the Veterans Administration's "assigned a 100 percent evaluation" for the claimant's schizophrenia, (Exhibit 10E/1), which has entitled the claimant to VA compensation. However, the DVA (or "VA") makes a determination of the claimant's disability based on the evidence submitted by the claimant, the claimant's medical records, and compensation and pension (C & P) medical exam reports. The VA rates disability from 0 percent to 100 percent in 10 percent increments. If the VA finds that a veteran has multiple disabilities, it will use a Combined Rating Table to calculate a combined disability rating. Disability ratings are not additive, meaning that if a veteran has one disability rated 60 percent and a second disability rated 20 percent, the combined rating is not 80 percent. Because the DVA's Compensation and Rating System (CRS) is so disparate from the Social Security Administration disability adjudication system, the undersigned gives little weigh to the VA disability rating provided by the claimant. Moreover, the overall evidence of record shows that, regardless of the possible disability levels assigned by the claimant, under the stands in the SSA Regulations, the claimant still capable of at least some work-related activities.

(Tr. 32).

The Social Security Regulations provide that a claimant may bring evidence of an impairment to the Commissioner's attention including "[d]ecisions by any governmental or nongovernmental agency about whether [an individual is] disabled . . . ." 20 C.F.R. § 1512(b)(5). In the Eleventh Circuit, "[t]he findings of another agency on disability, while not binding on the Commissioner, are entitled to great weight." *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983)). A VA rating of disability,

while not binding, is evidence that should be given great weight. *Olson v. Schweiker*, 663 F.2d 593, 597 n.4 (5th Cir. 1981); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A 1981).

In *Brown-Gaudet-Evans v. Commissioner of Social Security*, the Eleventh Circuit held that "[i]t is not disputed that the VA's 'disability' determination relies on different criteria than the SSA's determination. But that does not mean that the ALJ can summarily ignore the VA's determination nor give it 'little weight.'" *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x. 902, 904 (11th Cir. 2016). The Court remanded the case for further proceedings and held that "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." *Id.*

In this case, the Court finds that the ALJ erred by failing to properly evaluate Plaintiff's VA disability rating. Here, the ALJ accorded "little weight" to the VA rating on the basis that the VA disability determination process is different than the process used by the SSA. The fact that the two agencies utilize different determination processes does not constitute good cause for rejecting evidence that is entitled to great weight. In addition, Plaintiff's statement that the overall evidence shows that he is capable of at least some work-related activities is a general statement that does not satisfy the ALJ's duty to provide specific reasons for discounting the determination.

On remand, the Court will require the ALJ to consider and closely scrutinize the VA's disability determination, provide specific reasons for the weight he accords VA's disability determination, and conduct further proceedings as necessary.

**b) Whether the ALJ erred by giving Plaintiff's GAF scores little weight.**

The medical record shows that Plaintiff was assessed a Global Assessment of Functioning (GAF) score twelve times from 2007 until 2015. (Tr. 117, 364, 411, 413, 431, 466, 492, 558, 612, 633, 753, 804). The highest GAF score assessed was 55, the lowest score assessed was 40, and

the average of all scores is 48.5, indicating serious symptoms or any serious impairment in social, occupational, or school functioning.

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's GAF scores in making his RFC determination. (Doc. 19 p. 25). Plaintiff contends that the numerous GAF scores in his medical record indicate that he has a consistent and reliable history of serious symptoms related to his schizophrenia which seriously impairs his social and occupational functioning. (Doc. 19 p. 24). In response, Defendant argues that the ALJ properly considered and discounted Plaintiff's GAF scores. (Doc. 19 p. 25).

In his decision, the ALJ specifically noted Plaintiff's GAF scores,

> The undersigned considered the Global Assessment of Functioning scores (GAF scores) throughout the record, but gave them little weight, since GAF scores are only a snapshot of the claimant's functioning on any given day and has dubious applicability for predicting one's ability to function in a competitive environment in the long run. The Commissioner of the Social Security Administration has declined to endorse GAF scores for use in the Social Security disability programs, and has indicated that such scores have no direct correlation to the severity requirements of the mental disorder listings (65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

(Tr. 26).

The Court finds no error in the ALJ's treatment of Plaintiff's GAF scores. As the ALJ correctly noted, a GAF score merely reflects an examiner's opinion regarding a patient's symptoms at the time of the examination, and does not necessarily provide insight into a patient's ability to function in a competitive environment. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32-34 (4th ed. 2000, Text Rev.) (describing the GAF scale used in Axis V of a diagnostic multiaxial evaluation). The American Psychiatric Association abandoned the GAF score in its most recent edition of the DSM "for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." See American

Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 16 (5th ed. 2013), quoted in Braid v. Comm'r of Soc. Sec., 2014 WL 1047377, at *5 n.9 (M.D. Fla. Mar. 18, 2014). Given the ambiguous correlation of GAF scores to a claimant's functional limitations, the Court finds no reversible error in the ALJ's decision to give little weigh to the scores.

In any event, even before the American Psychiatric Association abandoned the GAF scale, the Commissioner declined to endorse GAF scores for use in the disability programs as GAF scores "'have no direct correlation to the severity requirements of the mental disorders listings.'" *Zandman v. Comm'r of Soc. Sec.*, 2017 WL 1191385, at *7 (M.D. Fla. March 31, 2017) (*quoting Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005)). Plaintiff has failed to demonstrate the ALJ committed reversible error in his treatment of the GAF scores.

### c) Whether the ALJ erred by failing to properly weigh the mental health opinion evidence.

Plaintiff argue that the ALJ erred by improperly weighing the opinion evidence of record. Specifically, Plaintiff contends that the ALJ improperly accorded great weight to the opinions of non-examining consultants Jorge Pena, Ph.D. and Alan Harris, Ph.D., while according only some weight to the opinions of treating physicians Dr. Karl W. Isaac, M.D., and Juan Hernandez, M.D. (Doc. 19 p. 28-29). In response, Defendant argues that the ALJ properly considered the opinion evidence, providing substantial evidence for according some weight to the opinions of Dr. Isaac and Dr. Hernandez, and great weight to the opinions of Dr. Pena and Dr. Harris. (Doc. 19 p. 32-33).

In his decision, the ALJ addressed the opinion evidence at issue, here, as follows:

> As for opinion evidence, Jorge Pena, Ph.D., a state agency psychological consultant, opined that the claimant is capable of retaining simple instructions, location and procedures, is generally capable of persisting and completing tasks can communicate effectively and exhibits adequate social skills, but could experience occasional difficulties accepting

criticism and getting along with coworkers. (Exhibit 3A). Drs. Harris, a State agency psychological consultant, opined that the claimant would probably not work well with the public, and may have problems with changes in the work setting. (Exhibit 1A16)

The undersigned gives great weight to both Drs. Pena and Harris' opinions, since they are supported by the overall stable mental statuses examinations over record as well as the consultative examination of record, all of which show that the claimant's mental status is within a spectrum of normalcy, even when the claimant is not fully compliant with his medications (Exhibits 3F and 7F).

Karl Isaacs, M.D. examined the claimant, and filled out a "Mental Capacity Assessment," opining that, although the claimant has marked difficulties in understanding and remembering detailed instructions, he has only moderate difficulties remembering locations, work-like procedures, and understanding and remembering very short and simple instructions. As to sustained concentration and persistence, Dr. Isaac opined that the claimant may miss over four days of work a month due to his impairment, and even though the claimant has marked difficulties in seven of the ten areas analyzed under this rubric, the claimant has only moderate difficulties in his ability to carry out very short, simple instructions, and in his ability to make simple work related decisions. As to social interaction and adaptation, Dr. Isaacs opined that the claimant has only moderate or slight limitations in most of the areas judged under this rubric, having marked limitations only in the ability to get along with coworkers without causing distraction and in his ability to respond appropriately to changes in the work setting. Finally, Dr. Isaacs opined that the claimant's use of alcohol or other substances did not impact his conclusions, and that the claimant is able to voluntary control the use of such substances. (Exhibit 6F).

Juan Hernandez, M.D., also examined the claimant, and filled out a "Mental capacity Assessment," rendering an opinion that, overall paralleled the one give by Dr. Isaacs mentioned above, with slight variations as to intensity, but point to problems in the same areas listed by Dr. Isaacs (Exhibits 6F and 8F). It is important to note that both opinion agree that the claimant only has a light difficulty in understanding and carrying out very short and detailed instructions, and that the claimant would have some difficulty getting along with others, which have all been taken into consideration by the residual functional capacity above listed.

The undersigned gives some weight to both Drs. Hernandez and Isaacs' opinions, but does not adopt them in their entirety. For several reasons, while Drs. Hernandez and Isaacs' opinions tend to agree that while the claimant does have problems in adaptation, social interaction,

> understanding, and concentration, they vary as to the intensity of those limitation. For example, whether the claimant has marked or moderate difficulty in a certain area. Those inconsistencies, albeit understandable in a fluid area such as psychiatry, tend to cancel each other out, but do point to a general opinion that the claimant indeed has some difficulties in those areas. The undersigned did consider those opinions, as they are reflected by the mental limitations listed in the residual functional capacity statements above, but does not adopt the degree suggested by each of those opinions. Lastly, the undersigned gives little weigh to the part of Drs. Hernandez and Isaacs' opinions that suggest that the claimant would have to miss more than four days of work a month, since it is simply not supported by the evidence of record, which does not show emergency room visits, nor frequent visits to specialist. Moreover, the claimant's own admissions as to a regular routine, daily activities, and social interactions do not suggest that the claimant would have to miss four or more days of work a month.

(Tr. 30).

Social Security Regulations "establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion." *Belge v. Astrue*, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Under this hierarchy, "the opinions of examining physicians are generally given more weight than nonexamining physicians; treating physicians receive more weight that nontreating physicians; and specialists on issues within their areas of expertise receive more weight than nonspecialists." *Id*. (internal citations and quotations omitted).

Here, to the extent that Plaintiff is arguing that the ALJ erred by giving greater weight to the non-examining state agency psychological consultants than to the treating physicians <u>because</u> they are lower in the hierarchy of sources, the Court rejects this argument. An ALJ commits no error where he has good cause to reject the opinion of treating physicians and substantial evidence supports the determination that non-examining consultants are entitled more weight. *See Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013). The Court turns to that determination now.

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless "good cause" is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (noting that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d). "Good cause" for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Such a preference is given to treating sources because they are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

In this case, the Court finds no error in the ALJ's decision to accord some weight to the opinions of treating physicians Drs. Isaacs and Hernandez. The ALJ acknowledged the agreement between the opinions offered by Drs. Isaacs and Hernandez, but noted that the precise degree of limitation opined by in the general areas of limitation differed between the two. Nevertheless, the ALJ specified that the mental limitations opined were reflected by the mental RFC assessed in the decision. The ALJ explained that he rejected the opinions that Plaintiff would miss more than four days of work a month because it was not supported by the evidence of record and inconsistent with Plaintiff's reported daily activities, thus providing good cause not adopting this limitation finding.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties